ELISHA DOANE *vs.* JAMES W. RUSSELL.

An assignment of the property of an insolvent debtor, purporting to be executed by a com-missioner of insolvency, is evidence, under *St.* 1838, *c.* 163, § 5, of the right of the assignee to sue for the property, without proof of the commencement of the proceedings in in-solvency, or of the lawful appointment of the commissioner.

A lien on a chattel for labor and materials gives no right to sell the chattel to enforce the lien.

ACTION OF TORT for the conversion of a wagon. Trial in the court of common pleas, before *Hoar*, J.

The plaintiff claimed title as assignee in insolvency of Lem-uel T. Starkey, and offered in evidence an assignment to him of all Starkey's property, purporting to be executed by " Joshua C. Stone, commissioner in insolvency " for the county of Bristol. The defendant objected to its admission, without proof that

proceedings in insolvency had been commenced, and that Stone had been legally appointed commissioner. But the objection was overruled, and the paper admitted.

The evidence tended to show that Starkey left the wheels and shafts of a wagon with the defendant, to be repaired, and a body made and put upon them ; that the defendant did the work, as directed, and gave Starkey notice in writing of the amount of his bill, and that he should sell the wagon by public auction at a place and hour named, a week after the notice, for the purpose of defraying said bill, and of perfecting his lien, unless the bill should be previously paid; and that he sold the wagon pursuant to this notice.·

The defendant requested the judge to instruct the jury " that a mechanic, for additions to or services upon personal property, has a right, on giving due and reasonable notice to the owner, to sell the same, to perfect his lien." But the judge refused so to instruct the jury; and instructed them " that the defendant would have no right to sell said property, unless upon a contract, express or implied ; and that the sale was a conversion."

The jury returned a verdict for the plaintiff, and the defendant alleged exceptions.

*G. W. Searle*, for the defendant.

*C. P. Hinds & W. Tilton*, for the plaintiff.

SHAW, C. J. The assignment to the plaintiff was properly admitted. No evidence of the commencement of proceedings in insolvency was necessary, for the assignment is made, by *St.* 1838, *c.* 163, § 5, conclusive evidence of the authority of the assignee to sue. And the signature, purporting to be the official signature of a commissioner of insolvency to an instrument which he was empowered by law to execute, proves itself, in the absence of opposing evidence.

The more interesting question is, whether the defendant, holding a mechanic's lien on the wagon, for the payment of his work and materials, had a right, upon notice, and in case the bill was not paid in a reasonable time, to sell the wagon, and deduct his pay from the proceeds. If he had not, then the act of sale, being an abuse of his right of possession, and an unwarrantable exer-

cise of dominion over the property, especially of such a character as to put it out of his power to surrender the chattel, on demand, accompanied with payment or tender of his bill, would in law amount to a conversion. If he had such right, trover would not lie, and he would be responsible in assumpsit only for the balance of the proceeds of the sale, if any.

We have no case in Massachusetts in which this point has been directly decided. The general impression, we think, has been that the party having such lien for his work and materials has no legal right to sell the chattel for his reimbursement. The general language of the books, in describing such lien, favors this impression. It is a right "to retain," "to keep possession of," "to detain," &c., until he is paid. Such a right is said to be a personal right to detain, in contradistinction to an interest in the property; and if the party parts with the article, by a pledge, sale or otherwise, he loses his lien. Hence the distinction between such a lien for work and materials, as given by what was anciently called the custom of the realm, or now the general law, and an express pawn or pledge of goods by the owner, as collateral security for a loan of money. In the latter case, it is now held that when the debt has become due, and remains unpaid, the creditor, after a reasonable time, may sell the pledge; but otherwise when there is a mere lien, as in the case of mechanics, innholders and others, by custom. And we think this distinction and these rules are well established by authorities.

In the case of *Pothonier* v. *Dawson*, Holt N. P. 383, before Chief Justice Gibbs, he says : " Undoubtedly, as a general proposition, a right of lien gives no right to sell the goods. But when goods are deposited, by way of security, to indemnify a party against a loan of money, it is more than a pledge." He places it on the ground of an implied authority, arising from the nature of the transaction, that the pledgee, after due notice, shall have a power to sell the goods and reïmburse himself. The latter point has been held in this and other American states. *Parker* v. *Brancker*, 22 Pick. 40. *Hart* v. *Ten Eyck*, 2 Johns. Ch. 100.

The case in Holt, in which it was laid down as the general rule that a lien gives no right of sale, was a *nisi prius* case ; but

Doane *v.* Russell.

it was stated, by a very eminent judge, as a rule well established, and has been cited with approbation since.

In *Jones* v. *Pearle*, 1 Stra. 557, it was held that, except by the custom of London, an innkeeper had no right to sell horses on which he had a lien for their keeping.

So it is stated by Mr. Justice Buller, in his celebrated judgment in *Lickbarrow* v. *Mason*, reported in a note to 6 East, 21. Having described a lien to be a qualified right which, in given cases, may be exercised over the property of another, and illustrating the distinction between the owner of property and one having a lien on it, he says, that the former may sell or dispose of the goods as he pleases; " but he who has a lien only on goods has no right so to do; he can only retain them till the original price be paid." This is no judicial decision; but it is a statement of what the law was understood to be by a judge of great authority, and stated as a point so clearly settled and understood that it was used by way of illustration of a principle less clear.

But even in case of a pledge, as security for a debt, the property is not devested; the general property remains in the pledgor; it is a lien with a power of sale superadded; but, till the rightful execution of the power, the general property is not devested. *Walter* v. *Smith*, 5 B & Ald. 439.

These general doctrines are well stated, and the authorities reviewed, in *Cortelyou* v. *Lansing*, 2 Caines Cas. 200.

We think the rule is generally stated by the text writers, that a party having a lien only, without a power of sale superadded by agreement, cannot lawfully sell the chattel for his reimbursement. It is so stated in 1 Chit. Gen. Pract. 492; and he advises carriers and others, entitled to a lien, to obtain an express stipulation for a power of sale in case the lien is not satisfied. 2 Kent Com. (6th ed.) 642. Cross on Lien, 47. Woolrych on Com. & Merc. Law, 237. The language of the learned American commentator, in summing up his article on lien, is this: " I will conclude with observing that a lien is, in many cases, like a distress at common law, and gives the party detaining the chattel the right to hold it as a pledge or security for the debt, but not to sell it."

Doane *v.* Russell.

If it be said that a right to retain the goods, without the right to sell, is of little or no value; it may be answered that it is certainly not so adequate a security as a pledge with a power of sale; still, it is to be considered that both parties have rights which are to be regarded by the law; and the rule must be adapted to general convenience.  In the greater number of cases, the lien for work is small in comparison with the value, to the owner, of the article subject to lien; and in most cases it would be for the interest of the owner to satisfy the lien and redeem the goods; as in the case of the tailor, the coach-maker, the innkeeper, the carrier and others.  Whereas, many times, it would cause great loss to the general owner to sell the suit of clothes or other articles of personal property.  But further, it is to be considered that the security of this lien, such as it is, is superadded to the holder's right to recover for his services by action.  And if the transaction be a large one, and of such a character as to require further security, it may be provided for by an express stipulation for a power of sale, under such limitations as the particular circumstances of the case may indicate as suitable to secure the rights of all parties concerned.

Under the circumstances of the present case, the court, without stopping to consider whether the notice to the general owner was reasonable and sufficient or not, are of opinion that the defendant had no legal right to sell the wagon; that by the wrongful sale and parting with the possession, he lost his lien; that the owner's general property in the wagon remained unchanged; that this property, upon proceedings being taken against the owner as an insolvent debtor, and a regular assignment of the property, passed to the plaintiff as assignee; that this action can be maintained, and that the directions of the judge at the trial were right.          *Exceptions overruled.*